OPINION
Defendant-appellant Darnell Demitrus Mosley appeals his conviction and sentence entered by the Stark County Court of Common Pleas on one count of vandalism, in violation of R.C. 2909.05. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On August 9, 1998, appellant was arrested on charges of felonious assault, abduction, and vandalism resulting from an incident involving Jana Miller, appellant's on again off again girlfriend. A preliminary hearing was conducted in Canton Municipal Court. Thereafter, the matter was bound over to the Stark County Grand Jury which indicted appellant on one count of abduction in violation of R.C. 2905.02, one count of vandalism, in violation of R.C. 2909.05, and one count of domestic violence, in violation of R.C. 2919.25(A). The trial court returned the domestic violence count to the Canton Municipal Court for further prosecution. At his arraignment on September 11, 1998, appellant entered a plea of not guilty to all the charges. The matter proceeded to trial on October 22, 1998. At trial, Jana Miller testified, on August 7, 1998, she informed appellant he might not be the father of her unborn child although she originally told him he was the father. During the late evening on August 8, 1998, appellant began to question Miller about who could be the father. Miller attempted to avoid the conversation, but appellant persisted. After discovering the name "Joe" written in Miller's personal letters and calendar, and Miller's admission Joe could possibly be the father, appellant decided he wanted to visit Joe. Between 12:30 and 1:00 a.m. on August 9, 1998, appellant and Miller drove to Joe's residence. However, upon their arrival, appellant and Miller learned Joe no longer resided there. Appellant accused Miller of lying, and elbowed her in the side and punched her in the eye. Thereafter, the two returned to Miller's home. Later in the day on August 9, 1998, appellant stormed into Miller's house after spending some time with Miller's four year old daughter, Alexis, and demanded Miller talk to him. When Miller refused, appellant proceeded to the kitchen and retrieved a knife. Appellant threw Miller on the floor and put the knife to her neck. Alexis ran to a neighbor's apartment for help. As the fighting continued, appellant forced Miller into her vehicle, drove to the nearest payphone, and insisted she telephone Joe. As Miller proceeded to make the phone call, a police cruiser pulled up. Officer Michael Swihart asked appellant if everything was okay, and he responded, "Yes, we're making a phone call." Because Miller responded in the negative when the officer asked her if she was alright, Swihart instructed appellant to exit the vehicle. A second police cruiser arrived at the scene. After questioning Miller, the officers determined they had probable cause to arrest appellant. When Officer Myers advised appellant he was under arrest, appellant became irrate and began to fight. Officer Myers attempted to handcuff appellant, but appellant freed himself from the officer's grip and again started fighting. Appellant moved toward Miller, who was still in her vehicle. Despite Officer Myers' order to cease and desist, appellant continued to move toward Miller until the officer grabbed him and pulled him to ground. Due to appellant's continued fighting, Officer Myers sprayed him with pepper spray. Officers Myers and Butterworth eventually placed appellant into the police cruiser. After appellant was secured in the backseat of the cruiser, he kicked out the back passenger's side window, damaging the door. Appellant, who testified on his own behalf at trial, claimed the police officers never informed him he was under arrest, and one officer just grabbed him from behind while another officer maced him. Appellant further testified he began to yell out the back window of the cruiser in an attempt to get a witness' phone number. As a result of his attempt to speak to this witness, appellant asserts the officers sprayed him with pepper spray a second time. After being maced, appellant stated he rolled over and began kicking the window. Appellant admitted he kicked the window a few times and then it broke. After hearing all the evidence and deliberations, the jury found appellant not guilty of abduction, but guilty of vandalism. The trial court sentenced appellant to a twelve month term of incarceration. The trial court also ordered appellant pay restitution to the City of Canton. The trial court memorialized the jury's verdict and its sentence in an Entry dated October 28, 1998. It is from this conviction and sentence appellant appeals, raising as his sole assignment of error:
THE JURY VERDICT FINDING APPELLANT GUILTY OF VANDALISM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Herein, appellant raises a manifest weight of the evidence claim. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. The jury found appellant guilty of vandalism, in violation of R.C.2909.05(B)(2), which provides: (2) No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas smaller than that of the state.
The requisite mental state for vandalism is "knowingly", which is defined in R.C. 2901.22(B) as follows: (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
In his Brief to this Court, appellant maintains he did not knowingly kick the cruiser window, but kicked as an involuntary reaction resulting from the pain caused by the officer's macing him, and appellant's attempts to free himself. We find the testimony adduced at trial belies such an assertion. During the State's cross-examination of appellant, he admitted kicking out the cruiser window: [Q] [Assistant Prosecutor Jennifer Dave] And you admit to this Jury that you kicked that car window out of that police cruiser?
[A] [Appellant] Yes, I did kick the car window out of the car.
Transcript of the Proceedings at 164.
During his direct examination, appellant likewise testified, "I started kicking out the window. I kicked the window a few times and then it broke." T. at 156. Officer Swihart testified he observed appellant yelling and screaming while in the back of the cruiser. Thereafter, the officer witnessed appellant kick the door, breaking the window and bending the door frame. Officer Myers testified, after he and his partner placed appellant in the cruiser, the officer turned around and immediately heard a crash. He looked at the cruiser and saw the passenger's side door caved out. The cruiser was rendered inoperable at that point. Both officers testified appellant was not maced again once he was secured in the cruiser. We find the foregoing testimony provides sufficient evidence from which the jury could conclude appellant knowingly caused serious physical harm to property owned by the City of Canton. Based upon the facts noted supra, and the entire record, we do not find the jury's verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. We do not disagree with the jury's resolution of the evidence.
Appellant's sole assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Gwin, J. concur